**SPENCER FANE LLP**
John Randall Jefferies (No. 3512)
Mary E. Bacon (No. 12686)
300 S. Fourth Street, Suite 950
Las Vegas, NV 89101
Telephone: (702) 408-3411
Facsimile: (702) 408-3401
E-mail: rjefferies@spencerfane.com
        mbacon@spencerfane.com

*Attorneys for Use Plaintiff*
*Wells Cargo, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| United States of America for the Use and Benefit of Wells Cargo, Inc.<br><br>Plaintiff,<br><br>v.<br><br>Alpha Energy and Electric, Inc., a Missouri corporation; and American Contractors Indemnity Company, a California corporation.<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT**<br>**(Miller Act Bond)**<br><br>**JURY TRIAL DEMANDED** |

The United States of America, for the use and benefit of Wells Cargo, Inc. ("Wells Cargo"), complains and alleges as follows:

## PARTIES

1. Wells Cargo is a Nevada corporation that is authorized to transact business in Nevada. At all relevant times, Wells Cargo maintained an AB General Engineering and General Building license with the Nevada State Contractor's Board, license no: 0000273.

2. Upon information and belief, Alpha Energy and Electric, Inc., d/b/a Alpha General Contracting ("Alpha"), is a Missouri corporation that is authorized to transact business in Nevada. Alpha is licensed as an electrical contractor in Kansas City, Missouri,

WA 11415691.1

1  license no: 952274.

2      3. Upon information and belief, American Contractors Indemnity Company

3  ("ACIC") is a California corporation that is authorized to issue surety bonds in Nevada.

4                        **JURISDICTION AND VENUE**

5      4. This Court has jurisdiction over the subject matter of this dispute pursuant to 40

6  U.S.C. § 3133, more commonly known as the Miller Act.

7      5. Venue of this action properly rests in the District Court, District of Nevada

8  under the Miller Act, 40 U.S.C. § 3133, which provides for venue in the United States

9  District Court for the District in which the contract was performed.

10                      **GENERAL ALLEGATIONS**

11     6. On September 30, 2016, Alpha contracted with the US Army Corp of

12 Engineers, Los Angeles District ("USACE") to construct and improve a campground,

13 more specifically identified as Contract No: W912PL-16-C-0027, Nellis Man

14 Campground – Nellis & LV Blvd. (the "Contract" or the "Project").

15     7. Alpha obtained Miller Act payment bond no. 1000965495, from ACIC

16 ("Payment Bond") to ensure that all entities providing labor or materials on the Project

17 were duly paid. A true and correct copy of the bond is attached hereto as **Exhibit A** and

18 incorporated herein by this reference.

19     8. On March 30, 2017, Alpha entered into a subcontract with Southwestern

20 Construction, Inc. ("Southwestern") to perform certain labor and materials related to cut,

21 fill, rough, and grade landscaping and asphalt roadways on the Project (the

22 "Subcontract"). A true and correct copy of the Subcontract is attached hereto as **Exhibit B**

23 and incorporated by this reference.

24     9. Southwestern entered into a subcontract with Wells Cargo to perform certain

25 work and provide certain labor and materials related to asphalt paving on the Project (the

26 "Second-tier Subcontract"). The Second-tier Subcontract is evidenced by two signed

proposals dated January 6, 2017 and December 11, 2017. True and correct copies of the documents compromising the Second-tier Subcontract are attached hereto as **Exhibit C** and incorporated by this reference.

10. The services, materials, and labor furnished by Wells Cargo in the prosecution of the Second-tier Subcontract work and completion of the Project were and are reasonably worth the sum of $412,919.20. Despite Alpha's acceptance, use, and incorporation of Wells Cargo's services, materials, and labor into the Project, and despite demands from Wells Cargo to Alpha and ACIC, Alpha has only paid for a portion of the amounts due. There is now due, owing, and unpaid to Wells Cargo the sum of $133,814.76.

## COUNT ONE

### (Miller Act, 40 U.S.C. § 3131, *et. seq.*)

### (All Defendants)

11. Wells Cargo realleges and incorporates herein all of the allegations set forth in the preceding paragraphs.

12. ACIC issued Payment Bond No. 1000965495 to Alpha for the Project.

13. Pursuant to the Payment Bond and 40 U.S.C. § 3131, *et. seq.*, Wells Cargo is entitled to recover from Alpha and ACIC, jointly and severally, for the reasonable value of the services, material, and labor provided to Alpha for incorporation into the Project, a portion of said value being the $133,814.76 that is past due and unpaid.

14. Wells Cargo provided timely notice of its claim against the Payment Bond on March 12, 2018.

15. Wells Cargo last provided services, labor, or material to the Project on or about December 14, 2017.

WA 11415691.1

**COUNT TWO**

**(Unjust Enrichment against Defendant Alpha)**

16. Wells Cargo realleges and incorporates herein all of the allegations set forth in the preceding paragraphs above.

17. Without intending to gratuitously or officiously confer a benefit upon Alpha, Wells Cargo provided services, labor, and materials to Alpha for incorporation into the Project. Alpha has received a benefit, in that it has received and accepted the services, labor, and materials supplied by Wells Cargo.  It would be unjust for Alpha to retain the benefit of such work without paying Wells Cargo the unpaid balance of $133,814.76.

18. Wells Cargo has been harmed because it incurred costs for the said services, labor, and materials.

19. There is no justification for Alpha's enrichment.

20. Alpha has been unjustly enriched and is liable to Wells Cargo to the extent it has not paid Wells Cargo for the reasonable value of the labor and services provided, which is the $133,814.76 currently owed.

**WHEREFORE**, Use Plaintiff Wells Cargo prays for relief as follows:

A.    As to Count One, a joint and several award of direct, general, and special damages against Alpha and ACIC to be proven at trial, but in no event less than the $133,814.76 that is currently due;

B.    As to Count Two, an award of direct, general, and special damages against Alpha Construction Company to be proven at trial, but in no event less than the $133,814.76 that is currently due;

D.    Prejudgment and post judgment interest at the highest rate permitted by law;

E.    Attorneys' fees and costs; and

F.    Such further relief as the Court deems just or proper.

WA 11415691.1

1   DATED this 28th day of June, 2018.

2                                       SPENCER FANE LLP

3

4                                       By /s/ Mary E. Bacon, Esq.
                                           John Randall Jefferies, Esq. # 3512
5                                          Mary E. Bacon, Esq. #12686
                                           300 S. Fourth Street, Suite 950
6                                          Las Vegas, NV 89101
                                           Attorney for Use Plaintiff
7                                          Wells Cargo, Inc.

8

9                      **DEMAND FOR A JURY TRIAL**

10       Pursuant to Federal Rule of Civil Procedure 38(b), Wells Cargo, Inc. hereby

11   demands a trial by jury on all issues triable by jury.

12

13   DATED this 28th day of June, 2018.

14                                      SPENCER FANE LLP

15

16                                      By /s/ Mary E. Bacon, Esq.
                                           John Randall Jefferies, Esq. # 3512
17                                         Mary E. Bacon, Esq. #12686
                                           300 S. Fourth Street, Suite 950
18                                         Las Vegas, NV 89101
                                           Attorney for Use Plaintiff
19                                         Wells Cargo, Inc.

20

21

22

23

24

25

26

WA 11415691.1

# EXHIBIT 1

Bond # 200965495

| **PAYMENT BOND**<br>*(See instructions on reverse)* | DATE BOND EXECUTED *(Must be same or later than date of contract)*<br>10/07/2016 | OMB Control Number: 9000-0045<br>Expiration Date: 7/31/2019 |
|---|---|---|

Paperwork Reduction Act Statement - This information collection meets the requirements of 44 USC § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number. The OMB control number for this collection is 9000-0045. We estimate that it will take 60 minutes to read the instructions, gather the facts, and answer the questions. Send only comments relating to our time estimate, including suggestions for reducing this burden, or any other aspects of this collection of information to: General Services Administration, Regulatory Secretariat Division (M1V1CB), 1800 F Street, NW, Washington, DC 20405.

PRINCIPAL *(Legal name and business address)*

ALPHA ENERGY AND ELECTRIC
DBA ALPHA GENERAL CONTRACTING
1000 E. 34TH STREET
KANSAS CITY, MO 64109-1808

TYPE OF ORGANIZATION *("X" one)*

☐ INDIVIDUAL   ☐ PARTNERSHIP   ☐ JOINT VENTURE

☒ CORPORATION   ☐ OTHER *(Specify)*

STATE OF INCORPORATION
Missouri

SURETY(IES) *(Name(s) and business address(es))*

American Contractors Indemnity Company
601 South Figueroa St. Suite 1600
Los Angeles, CA 90017

PENAL SUM OF BOND

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 4 | 730 | 350 | 0 |

| CONTRACT DATE | CONTRACT NUMBER |
|---|---|
| 09/30/2016 | W912PL-16-C-0027 |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| PRINCIPAL | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. *(Seal)* | 2. *(Seal)* | 3. *(Seal)* | Corporate Seal |
| NAME(S) & TITLE(S) *(Typed)* | 1. Gabriel Okafor<br>President | 2. | 3. | |

| INDIVIDUAL SURETY(IES) | | | |
|---|---|---|---|
| SIGNATURE(S) | 1. *(Seal)* | 2. *(Seal)* | |
| NAME(S) *(Typed)* | 1. | 2. | |

| CORPORATE SURETY(IES) | | | | |
|---|---|---|---|---|
| SURETY A | NAME & ADDRESS | American Contractors Indemnity Company<br>601 South Figueroa St. Suite 1600 LA, CA 90017 | STATE OF INCORPORATION<br>California | LIABILITY LIMIT<br>$ 6,300,000 | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. Dustin B. Ells<br>Attorney-In-Fact | 2. | |

AUTHORIZED FOR LOCAL REPRODUCTION
*Previous edition is NOT usable*

STANDARD FORM 25A (REV. 8/2016)
Prescribed by GSA-FAR (48 CFR) 53.2228(c)

# EXHIBIT 2



## STANDARD SUBCONTRACT AGREEMENT NLA601 for W912PL-C-16-0027

This Agreement is made this **30 March 2017** between **ALPHA General Contracting** (Contractor) and **Southwester Construction Inc.** (Subcontractor). The work described in Section 1 below shall be performed in accordance with the Prime Contract between **ALPHA General Contracting** (Contractor) and the Owner(s) specified in Section 1 and **Appendix C**, which include all plans, specifications and other contract documents attached to or incorporated into the Prime Contract, for the Project.

Contractor has entered into a Prime Contract with: U S Army Corp of Engineers Los Angeles District

to perform certain labor and equipment for the construction and completion of:

Addition/Alteration Family Camp RV Park at Nellis Air Force Base Las Vegas NV

Further, the Prime Contract, which has been made and remains available to Subcontractor for review, is expressly incorporated herein by this reference. Subcontractor agrees to be bound to Contractor by all of the terms and provisions of the Prime Contract, and to assume toward Contractor all of the duties, obligations and responsibilities that Contractor by the Prime Contract assumed toward Owner. Subcontractor agrees further that Contractor shall have the same rights and remedies against the Subcontractor as Owner, under the terms and provisions of the Prime Contract, has against Contractor, with the same force and effect as though every such right and remedy were set forth herein in full. The terms and provisions of this Subcontract are intended to be and shall be in addition to and not in substitution for any of the terms and provisions of the Prime Contract. The provisions of this Subcontract and the Prime Contract are intended to supplement and complement each other and shall, where possible, be interpreted. Barring other direction from Contractor, the interpretation that is more costly to or which imposes the greater duty upon the Subcontractor shall control, and if that guideline does not resolve the conflict, then the terms of this Subcontract shall control.

If applicable, Contractor and Subcontractor agree that this Agreement is a non-exclusive master agreement to perform certain construction activities, but only upon execution of a Task Order in a form attached hereto as Appendix C. Contractor, at its discretion, may from time to time contract with Subcontractor to perform said work as indicated in Appendix C and/or through specific Task Order. In case of a conflict between this Subcontract Agreement (and the Contract Documents as incorporated herein) and a Task Order, the terms of the Task Order shall prevail.

## GENERAL CONDITIONS

**SECTION 1.** <u>SCOPE</u>. Subcontractor agrees to furnish all labor, materials, equipment and other facilities required to complete the following general scope of Work and as detailed on **Appendix C**.

**Southwestern Construction Inc. will provide all the cut, fill, rough grade and landscaping as well as the asphalt roadways for base contract and bid options 1 & 2. <span style="color:red">Any Import or Export of native fill shall be completed by Southwestern Construction and shall be completed as a modification to the contract based from previously estimated unit price.</span>**

**<u>All performance, obligations, and work to conform to the Safety And Environmental Provisions noted on Appendix D and any and all Special Conditions noted in Appendix E.</u>**

SECTION 2.<u>PAYMENT</u>. Contractor agrees to pay Subcontractor for the strict performance of his work, as denoted on Attachment C for scope and price, subject to adjustments for changes in the work as may be directed in writing by Contractor. Owner's payment to Contractor for the Subcontractor's account is an **absolute condition precedent** to Contractor's obligations to make progress or final payment to the Subcontractor under this Subcontract. Subcontractor expressly agrees to bear the risk of the Owner's non-payment. Subcontractor is relying on the credit of Owner, rather than Contractor, for payment of its efforts.

Payment shall be made in monthly progress payments based on percentage completed, which shall be solely determined by Contractor, of labor and material which have been incorporated into the work or improvement; payments to Subcontractor shall be paid the following month with sums received by Contractor from Owner for work performed by Subcontractor as reflected in Contractor's applications for payment. When applicable and if all conditions to payment are present and no withholding has occurred, progress payments shall be paid by Contractor to Subcontractor no later than 7 days from receipt of payment from Owner.  If applicable, any unexcused late payment to Subcontractor shall be subject to an interest penalty (only if applicable pursuant to the Prime Contract). Further, Subcontractor shall include a similar payment clause in its lower-tier contracts with its lower-tier subcontractors, suppliers, or materialmen in that progress payments shall be made no later than 7 days from receipt of payment from Contractor, and any unexcused late payments are subject to an interest penalty (only if applicable pursuant to the Prime Contract). Subcontractor shall insure that its lower-tier subcontractors, suppliers or materialmen also have similar payment clauses in any applicable agreements.

Subcontractor agrees to furnish, if and when required by Contractor, a listing of sub tier subcontractors and material suppliers at time of award and upon request for payment provide, payroll affidavits, receipts, vouchers, releases of claims for labor and material from his employees, subcontractors, suppliers, and any required construction submittals in a form satisfactory to Contractor, prior to receipt of any payment. Subcontractor's listing is at all times subject to Contractor's approval, which approval shall not be unreasonably withheld, and Subcontractor shall not subsequently change such lower tier subcontractors without Contractor's prior written approval.  Subcontractor shall bind all lower tier subcontractors and suppliers to Subcontractor in the same manner as Subcontractor is bound to Contractor, and as Contractor is bound to Owner.

Contractor may withhold amounts otherwise due under this Subcontract, or any other arrangement between the parties, as an offset to cover 150% of Contractor's reasonable estimate of any liability Contractor has incurred or may incur for which Subcontractor may be responsible under this Subcontract, or as a result of lack of progress or evidence of nonpayment or sub tier subcontractors or suppliers. or under any other agreement between the parties. This offset shall be subject to adjustment when the exact amounts of liability are determined, but in no event shall the amounts withheld bear interest.

Contractor may, at its option, make any payment or portion thereof by joint check payable to Subcontractor and any of its subcontractors, suppliers and/or material suppliers. Retention in the amount of up to ten (10%) percent may be held in accordance with the requirements of the Prime Contract as required by law.

Subcontractor, its officers, directors and owners shall act as a fiduciary for Contractor and

Subcontractor's employees, lower tier subcontractors, and suppliers on the Project and all progress payments shall be considered trust funds intended to be held in trust to pay those parties all sums owing to them for work, materials, equipment, labor or other obligations of Subcontractor related to the Project, before paying itself any remaining funds. Subcontractor hereby grants Contractor a security interest in Subcontractor's accounts receivables to secure Subcontractor's obligations hereunder.

SECTION 3. ENTIRE AGREEMENT. This Agreement represents the entire agreement between Contractor and the Subcontractor and supersedes any prior written or oral representations. Subcontractor and his subcontractors are bound by the Prime Contract and any contract documents incorporated therein insofar as they relate in any way, directly or indirectly, to the work covered by this Agreement.

SECTION 4. TIME. **Time is of the essence of this Agreement**. Subcontractor shall conform to Contractor's progress schedules and provide Contractor with scheduling information in a form acceptable to Contractor, including any changes made by Contractor in the scheduling of work. Subcontractor shall coordinate its work with that of all other contractors, subcontractors, and suppliers so as not to delay or damage their performance. Subcontractor is bound to the substantial completion date, as well as the final completion date for the entire Project in accordance with the Prime Contract, Contractor's schedule, and Appendix C. Subcontractor agrees that all necessary costs to meet these required completion dates are included in the Subcontract Price and that no time extensions will be granted under any circumstances except as may be granted by the Owner. Subcontractor shall promptly provide requested scheduling information. Contractor reserves the right to modify the sequence of Subcontractor's activities as warranted, with no additional compensation to Subcontractor.

SECTION 5. DELAY. In the event that Subcontractor's work is delayed for any reason, including acts of the Contractor, Subcontractor's sole remedy shall be an extension of time equal to the period of delay, provided Subcontractor has given Contractor written notice of the commencement of delay within 48 hours of its occurrence. In the event that Contractor, in its sole discretion, should seek compensation from the Owner as a result of any delay, Subcontractor shall be entitled to an equitable portion of any amount recovered by Contractor, minus an aliquot share of the cost of pursuing said claim. This provision shall not be construed to require the Contractor to pursue any delay claim against the Owner or any other party. If applicable, Subcontractor assumes the responsibility to pay Contractor such liquidated damages as may be assessed against Contractor under the Prime Contract for delays related to Subcontractor's work.

SECTION 6. CHANGES IN WORK. Subcontractor shall make no changes in the work covered by this Agreement without written direction from the Contractor. Contractor shall have the right by written order to direct changes, additions, deletions, or alterations to the Subcontract Work or the time of performance. Subcontractor shall not be compensated for any change that is made without such written direction. No changes in the work covered by this Agreement shall exonerate any surety or any bond given in connection with this Agreement. The Subcontractor would be required to proceed with all work directed by the Contractor pending resolution of disputes or changes. Should Subcontractor claim any such order or any act by Contractor or others would cause additional costs, or if Subcontractor otherwise believes it is entitled for any reason to an adjustment in the Subcontract Price or Subcontract time, Subcontractor shall submit written notice to Contractor within the time proscribed in the Prime Contract or within ten (10) calendar days (whichever is shorter) of said claim arising, and prior to commencing such work; otherwise, such claim shall be deemed waived.

SECTION 7. CLAIMS. If any dispute shall arise between Contractor and Subcontractor regarding performance of the work, or any alleged change in the work, Subcontractor shall timely perform the disputed work and shall give written notice of a claim for additional compensation for the work within the time proscribed in the Prime Contract or within ten (10) calendar days (whichever is shorter) after commencement of the disputed work. Subcontractor's failure to give written notice within the proscribed time period constitutes an agreement by Subcontractor that it will receive no extra compensation for the disputed work.

SECTION 8. INSPECTION AND PROTECTION OF WORK. Subcontractor shall make the work accessible at all reasonable times for inspection by the Contractor and Owner. Subcontractor shall, at the first opportunity, inspect all material and equipment delivered to the job site by others to be used or incorporated in the Subcontractor's work and give prompt notice of any defect therein Subcontractor assumes full responsibility to protect the work done hereunder until final acceptance by the Architect,

Owner and Contractor.

SECTION 9. <u>LABOR RELATIONS</u>. Subcontractor shall maintain labor relations policies in conformity with the directions of the Contractor and shall comply with those labor agreement(s) applicable to the work performed under this Agreement, to the extent required by the Contractor. If the Contractor is bound to any collective bargaining agreement(s), which require that the work performed under this Subcontract be performed pursuant to the terms and conditions of such agreement(s), Subcontractor shall perform such work in conformity with the terms and conditions of such agreement(s).

SECTION 10. <u>TERMINATION</u>. Subcontractor shall be deemed in default of this Agreement if it should fail to rectify any contractual deficiencies, including failure to pay its creditors, within three (3) working days from receipt of Contractor's written notice, Contractor shall have the right to take whatever steps deemed necessary to correct said deficiencies and charge the cost thereof to Subcontractor, who shall be liable for the full cost of Contractor's corrective action, including reasonable overhead, profit, attorneys' fees, costs, and expenses. This clause is not exclusive and Subcontractor may be  deemed in default for other breaches of contract not explicitly listed.

If for any reason Subcontractor fails to start the Subcontract Work as requested by Contractor, or at any time refuses or fails to supply sufficient properly skilled workmen, proper material of the proper quality, or fails or becomes unable in any respect to prosecute timely or satisfactorily complete the Subcontract Work, or commits any other breach of this Subcontract, it shall be deemed in default of this Subcontract. In such event, the Contractor without prejudice to any other rights or remedies, may do all or any portion of the following: (a) Contractor may provide any labor and material which in Contractor's opinion are necessary to prosecute and satisfactorily complete the Subcontract Work by whatever method Contractor deems expedient, including the hiring of another subcontractor or subcontractors, and deducting the cost thereof, including Contractor's overhead, administrative expenses, and profit margin thereupon, from any payment due or thereafter to become due to Subcontractor; (b) Contractor may withhold further payments to Subcontractor until the Subcontract Work is accepted by the Owner; (c) Contractor may terminate Subcontractor's right to proceed with the Subcontract Work or any part thereof, and prosecute the remaining work as provided above; this termination shall be effective upon three (3) calendar day's notice, without any further notice required. (d) Contractor may, for the purposes of prosecuting and completing the Subcontract Work, take possession of and use without cost all material, equipment and tools belonging to or under the control of Subcontractor.  In that event, Contractor shall not be liable for the cost of depreciation nor for any damage occurring during reasonable use. (e) Contractor may pay any bills Subcontractor incurred performing Subcontract Work, and write a unilateral deductive change order therefore.

Contractor may at any time and for any reason terminate all or portions of Subcontractor's services hereunder at Contractor's convenience; in the event of termination for convenience by Contractor, Subcontractor shall recover only the actual cost of work completed to the date of termination.. Subcontractor shall not be entitled to any claim or lien against Contractor or Owner for any additional compensation or damages in the event of such termination.  Subcontractor hereby assigns to Contractor, as security for Subcontractor's performance hereunder, all lower tier subcontracts and/or any other agreements entered into in connection with the Project.  Such assignment shall be operative only upon notice by Contractor as to those specific agreements designated by Contractor.   All lower tier subcontracts and other such agreements shall provide that the lower tier subcontractor consents to such assignment.

SECTION 11. <u>INDEMNIFICATION</u>. See **Appendix A**.

SECTION 12. <u>INSURANCE</u>. See **Appendix B**.

SECTION 13. <u>CLAIMS RESOLUTION</u>. **All claims, disputes or other matters in question shall be resolved in strict accordance with the following provisions:**

**Pass through Claims:**  In the event that a claim, cause of action, dispute, or other matter in question is asserted by Subcontractor against Contractor but which Contractor, in its sole discretion, asserts is the responsibility of the Owner, the Architect, or their agents or representatives (hereinafter "pass through claim"), Subcontractor agrees that the dispute shall be resolved in accordance with any and all dispute resolution procedures in the Prime Contract and Subcontractor shall be bound to Contractor to the same extent as Contractor is bound to those procedures and to any associated rights and remedies as provided

in the Prime Contract.

In the event of a pass through claim that Contractor decides to prosecute (wholly or partially) on behalf of Subcontractor, Subcontractor agrees to be bound to any findings, determinations, or awards made, whether or not Subcontractor is a party to the proceedings. Subcontractor also agrees to cooperate fully with Contractor and to furnish all documents, statements, witnesses, and other information required by Contractor and agrees to pay or reimburse Contractor for all expenses and costs, including reasonable attorney fees incurred in connection therewith, to the extent of Subcontractor's interest in such claim or dispute. It is further agreed that Contractor shall not be liable to Subcontractor in any greater amount than Owner or third party is liable to Contractor, less any markups or costs incurred by Contractor.

In the event Contractor (at Contractor's sole discretion) decides to allow Subcontractor to prosecute the pass through claim, Subcontractor agrees to prosecute said claim in the name of Contractor and to pay Contractor fifteen percent (15%) of any amount thereby recovered or collected on behalf of Subcontractor, and to take full responsibility for the preparation, presentation, appeal and final disposition of such claims, and shall pay all the expenses thereof including attorney fees.

**All other Claims:** All other claims, causes of action, disputes or other matters in question which are not eligible for or subject to arbitration or dispute resolution under the Prime Contract shall be resolved by litigation. The exclusive forum for and venue of such litigation shall be Spokane Superior Court, Spokane County, Washington. To the fullest extent permitted by law, Contractor and Subcontractor hereby expressly waive their respective rights to a trial by jury for any claims or counterclaims arising out of or relating to this Agreement or enforcement thereof, including but not limited to claims arising out of contract, tort or otherwise. As between the parties to this Subcontract, the prevailing party in any litigation shall be entitled to an award of its attorney fees and costs incurred.

SECTION 14. <u>WARRANTY</u>. Subcontractor warrants to Owner, Architect and Contractor that all materials and equipment furnished shall be new, free from faults and defects and of good quality, unless specified by the Prime Contract, i.e. recovered materials. Subcontractor hereby warrants its work against all deficiencies and defects for the period required by the Prime Contract or the longest period permitted by the law of this State, whichever is less.

SECTION 15. <u>LOWER-TIER CLAIMS</u>. Subcontractor shall remove or cause to be removed any and all liens, bond claims or retainage claims of lower tier Subcontractors, suppliers, or laborers before any action is brought to enforce the same, or within ten (10) days after written demand by Contractor, whichever first occurs. Subcontractor agrees to indemnify, defend and hold Contractor, Contractor's surety, Owner and the Project free and harmless of all liability for any and all such liens or claims, together with attorney fees and costs and expenses related thereto. Without limitation as to any such liens or claims, upon the written request of Contractor, Subcontractor shall post the cash deposit or bond provided for in any applicable statute that permits a construction lien to be "bonded off" real property. If Subcontractor fails to remove or bond off such liens or claims, all expenses, including attorney fees and costs, so incurred by Contractor in doing so, shall be immediately due from Subcontractor to Contractor and shall bear interest at twelve percent (12%) per annum.

SECTION 16. <u>MISCELLANEOUS</u>
1. No modification of this Subcontract and no waiver of any rights under this Subcontract shall be valid or binding on the parties unless the same is in writing signed by both parties.

2. This Subcontract shall be considered to have been made in and shall be interpreted, to the extent permitted by law, under the laws of the State where the Project is located.

3. The partial or complete invalidity of any one or more provisions of this Subcontract shall not affect the validity or continuing force and effect of any other provision. If any provision is invalid, in whole or in part, the balance of the provisions shall be considered reformed to reflect the intent of the parties to the greatest extent possible consistent with the law.

4. The failure of either party to insist, in any one or more instances, upon the performance of any of the terms, covenants, or conditions of this Subcontract, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right as respects further performance.

5. This Subcontract represents the final integrated understanding of the parties and shall supersede any prior proposals, offers, negotiations, revisions, unincorporated written communications or oral discussions, statements, representations or agreements.

**SECTION 16. SPECIAL PROVISIONS As noted on Appendix E.**

SUBCONTRACTOR – Southwestern Construction

By:

Printed Name:  Steve Thurston

Title:  Controller, Las Vegas Area Manager

Date: 30 March 2017

ALPHA GENERAL CONTRACTING

By:

Printed Name: Ellard Comstock

Title: Senior Project Manager

Date: 27 March 2017



**STANDARD SUBCONTRACT AGREEMENT NLA601 – W912PL-16-C-0027**

APPENDIX A: INDEMNIFICATION

This Appendix A is hereby made a part of the Subcontract by and between Contractor and Subcontractor.

1.  Subcontractor assumes responsibility for and agrees at the sole discretion of Contractor to defend, indemnify and hold Contractor, Contractor's surety, and Owner (hereinafter "Indemnitees") harmless from any and all claims, demands, damages, expenses, losses, fines, penalties or liabilities, including loss of use, arising from, resulting in any manner directly or indirectly from or connected with or in the course of the performance of the Subcontract Work or the Subcontract obligations, including without limitation claims of subcontractors and suppliers contracting with Subcontractor.  Except as provided below, Subcontractor's duty to defend Indemnitees shall not be apportioned or reduced in any way by the negligence or other fault of Indemnitees, or their employees or agents, or the fault or negligence of Subcontractor or its employees or agents, or any other third-party.  Subcontractor's obligation to defend, indemnify and hold Indemnitees harmless shall include, but will not be limited to, the reasonable hourly rate and expenses of Indemnitees' employees and officers spent in connection with the claim, demand fare, penalty or liability, attorney and expert fees, court costs, and all other claim-related expenses, to the fullest extent permitted by law, even though such claims may prove to be false, groundless, or fraudulent, subject only to the limitations provided below, if the jurisdiction requires such limitation.

2.  To the fullest extent of the law and insofar as the duty to indemnify, including the duty and cost to defend, is subject to an anti-indemnity statute, the following limitations apply:

    a.  Subcontractor's duty to indemnify, including the cost and duty to defend, shall not apply to liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of Contractor or Contractor's agents or employees.

    b.  Subcontractor's duty to indemnify, including the cost and duty to defend, when the bodily injury and/or property damage is caused by or results from the concurrent negligence of (i) the Contractor, its agents, or employees and (ii) the Subcontractor or the Subcontractor's agents or employees, and lower-tier subcontractors or suppliers of any tier, shall be enforceable only to the extent of Subcontractor's (including Subcontractor's agents, employees, lower tier subcontractors, and suppliers) negligence except when negligence is not a requirement of liability.

To the fullest extent of the law and insofar as the duty to defend is subject to an anti-indemnity statute, if Indemnitees and Subcontractor do not agree on the extent of each party's negligence within fourteen (14) days from Indemnitees' tender of the claim to Subcontractor, Subcontractor shall pay all costs to defend Indemnitees subject to reimbursement based on the ultimate finder of fact's apportionment of liability. Nothing herein shall reduce or otherwise limit Subcontractor's indemnification obligations to Indemnitees, including the cost and duty to defend, for claims that are not subject to the provisions of an applicable anti-indemnity statute.

3.  For the purposes of these indemnification provisions only, Subcontractor specifically and expressly waives any immunity that may be granted it under the worker's compensation laws of any state, and Subcontractor specifically and expressly understands it is assuming potential liability for actions brought by its own employees, agents, or servants; provided that such waiver shall be expressly limited to Subcontractor's indemnity obligations herein and shall not be intended as a benefit to any third party. Further, the indemnification obligation under this Subcontract shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable to or for any third party

under worker's compensation acts, disability benefits acts, or other employee benefits acts.

4. Subcontractor's indemnification obligations as stated herein shall extend to claims occurring after this subcontract agreement is terminated as well as while it is in force. Nothing in this Appendix shall grant any third-party beneficiary rights to the Owner.

5. The partial or complete invalidity of any one or more provisions of this Appendix shall not affect the validity or continuing force and effect of any other provision. If any provision is invalid, in whole or in part, the balance of the provisions shall be considered reformed to reflect the intent of the parties to the greatest extent possible consistent with the law.

**THE UNDERSIGNED HEREBY CERTIFY THAT THIS ATTACHMENT WAS MUTUALLY NEGOTIATED.**

SUBCONTRACTOR – Southwestern Construction

By: _____

Printed Name: ___Steve Thurston_____

Title: ___Controller, Las Vegas Area Manager___

Date: ___6/2/2017_____

ALPHA GENERAL CONTRACTING

By: _____

Printed Name: Ellard Comstock

Title: Senior Project Manager

Date: 30 March 2017

**ALPHA**
ENERGY and ELECTRIC INC
DBA **ALPHA** GENERAL CONTRACTING
*Go Green Energy*

**STANDARD SUBCONTRACT AGREEMENT NLA601 – W912PL-16-C-0027**

## APPENDIX B

**Project:  Addition/Alteration Family Camp RV Park Nellis Air Force Base**

**Subcontractor: Southwestern Construction**

### Insurance

This Appendix B is hereby made a part of the Subcontract by and between Contractor and Subcontractor.

1.      Subcontractor shall secure, maintain, and pay for insurance; which shall include, but not be limited to, Commercial General Liability, Excess Liability, Comprehensive Automobile Liability, Employers Liability, and Workers Compensation.  The Workers Compensation Insurance coverage shall be maintained under the laws of the state where the work is performed and owner-operators are required to elect coverage under the workers compensation law of the governing state.   Comprehensive Automobile Liability insurance shall include coverage for all owned, hired, and non-owned automobiles. Minimum coverages and limits of liability for all insurance shall be as specified in this Appendix.

2.      Commercial General Liability insurance shall be based on Insurance Services Office Form CG 0001 Edition date 10/01 or its equivalent and shall include ongoing coverage and coverage for Products/Completed Operations, Broad Form Property Damage including Completed Operations, Leased Rented and Hired Coverage, Limited Pollution Liability, Blanket XCU, Incidental Malpractice, Host Liquor Liability, and Blanket Contractual Liability insurance. Coverage shall also require CG 2503 or equivalent per project aggregate endorsement.   The coverages required herein shall extend until expiration of the applicable statue of repose.

3.      Subcontractor shall obtain both a Broad Form Additional Insured Status or Endorsement to its Commercial General Liability policy Form CG 20 10 10/01 plus CG 20 37 10/01 or equivalent which includes completed operations coverage, as well as Commercial Automobile Liability Policy and umbrella/excess liability, naming Contractor, Owner, and any other entity required by the Main Contract, as "additional insureds".  The insurance afforded to additional insureds under Subcontractor's policies shall be primary insurance and not excess over, or contributing with, any insurance purchased or maintained by additional insureds, and shall confer a status or contain an endorsement which provides the same.  All insurance coverage maintained by Subcontractor, including without limitation additional insured endorsements, shall include a waiver of any right of subrogation of the insurers (including Workers Compensation – where permitted) against Owner, Contractor and Owner's and Contractor's other contractors.

4.      Commercial General Liability Insurance shall not contain an endorsement or exclusion (i) excluding assisted living/residential construction, (ii) excluding any injury or damage arising from a prior occurrence causing continuous or progressively deteriorating injury or damage, (iii) any form CG 2294 or equivalent which purports to remove the subcontractor exception to the Damage to Your Work Exclusion.   For work which involves an exterior insulation and finish system, Commercial General Liability Insurance shall not contain an endorsement or exclusion excluding residential, damage or injury

caused directly, indirectly, in whole or in part by the exterior insulation and finish system or by the design, installation, construction or manufacture thereof.

5.    Subcontractor is required to carry insurance for the amounts specified below and shall present current certificates of insurance and endorsements to Contractor prior to doing any work at the site.  The Subcontractor shall provide the Contractor written notice of cancellation of any insurance policy required in this Appendix by e-mail, facsimile, and U.S. Mail within two (2) days of receipt from the insurance carrier. Notice from the Subcontractor shall be sent to Contractor's addresses.

6.    Failure on the part of the Subcontractor to maintain the insurance as required in, or to not provide certification of insurance as required in this Appendix shall constitute a material breach of contract upon which the Contractor may, after five (5) business days notice to the Subcontractor to correct the beach, immediately terminate the Subcontractor or, at it's discretion, procure, restate or renew such insurance and pay any and all premiums in connection therewith, with any sums so expended to be repaid to the Contractor on demand, or at the sole discretion of the Contractor, offset against funds due the Subcontractor from the Contractor.  All costs for insurance, including any payment of deductible amounts, shall be considered incidental to and included in the Subcontract price and no additional payment will be made.

7.    If Subcontractor's existing policy(s) provides higher limits than those specified below, the higher limits shall be applicable and any endorsements or certificates of insurance provided by Subcontractor shall reflect those higher limits, otherwise Subcontractor shall provide insurance with the following minimum coverage limits:

Worker's Compensation pursuant to statutory limits pursuant to the Laws of the State where the where the work is performed and, in addition, Employer's Liability including a waiver of subrogation (where permitted) and $1,000,000.00 each accident/each employee/each disease.  Said coverage limits for Employer's Liability are separate and independent from any Worker's Compensation statutory limits.

Commercial General Liability Per project:    $1,000,000.00 each occurrence; $ 2,000,000 aggregate

Comprehensive Auto Liability:    $1,000,000.00 each occurrence

Umbrella/Excess Liability:    $1,000,000.00

END OF APPENDIX B



**STANDARD SUBCONTRACT AGREEMENT NLA601 – W912PL-16-C-0027**

## APPENDIX C

**Southwestern Construction will under this contract provide the following Scope of Work for the Nellis FAMCAMP project.**

- **Demo existing asphalt, trees, shrubs, gravel and chain link fences per specs and drawings**
- **Scarify and sub prep with cut and fill per plans and specs**
- **Provide all base course and asphalt surfaces for base contract and options 1 & 2**
- **Provide all DG, plants, boulders and irrigation for the landscaping per plans and specs**
- **Provide all rough grade for the site**
- **Provide all finish grades for roadways and landscaping.**
- **<span style="color:red">Includes import of Type II for asphalt paved areas only</span>**

**Total Price for this contract is $ 1,250,000.00**



**STANDARD SUBCONTRACT AGREEMENT NLA601 W912PL-16-C-0027**

APPENDIX D: SAFETY AND ENVIRONMENTAL PROVISIONS

1. Applicable Safety Standards
   a. [ x] OSHA
   b. [ x ] USACE EM385-1-1
   c. [ x] Other as noted below:

2. Subcontractor must submit a project specific Health and Safety Plan and Environmental Protection Plan or Subcontractor shall submit details of its Safety and Environmental Protection Policy and copies of the project specific Plans it intends to implement prior to commencement of any on site work.

3. Activity Hazard Analyses (AHA) is required for each definable feature of work.

4. Subcontractor shall comply with all applicable ALPHA General Contracting  Health, Safety and Environment criteria as well as all Owner required criteria.

5. Subcontractor will notify ALPHA General Contracting  immediately of any incident, near miss or accident that occurs on the Project.

6. Failure to adhere to the Project Safety and Environmental Plan may result in denial of access and/or subcontract termination.

7. Special provisions:
Banning Creek will comply with the EM385-1-1 latest edition and take into consideration for work with in the RV park while in use. Banning Creek will also comply with Alpha Energy and Electrics submitted Safety Plan for this project.



**STANDARD SUBCONTRACT AGREEMENT NLA601 – W912PL-16-C-0027**

### APPENDIX E: SPECIAL PROVISIONS

1. Davis Bacon wages to be paid to all employees working on the site and certified payrolls provided weekly prior to invoicing.

   [ x] DO Apply
   [ ] DO NOT apply
   [ x] Appropriate wage rates are attached

2. Subcontractor Package to be completed and returned to ALPHA General Contracting prior to commencement of Work.

3. Subcontractors are to be licensed by the State licensing board and all other applicable agencies where required.

4. Subcontractor is responsible for all applicable business and material taxes.

5. Liquidated damages assessed as part of this agreement as a flow down from the Prime contract

   [ x] DO apply in the amount of $ 150.00 per day
   [ ] Do apply and are noted on each Task Order Attachment C
   [ ] DO NOT apply

6. Subcontractor shall perform all Work in accordance with the Prime contract and in accordance with all plans, specifications and other contract documents attached to or referenced from the Prime contract.

7. Subcontractor shall identify all second tier subcontractors and material suppliers planned to be utilized on each task order.

8. Subcontractor will notify Contractor immediately of any defects in materials or equipment delivered to the job site or storage facility.

9. Special provisions that apply to this subcontract: Any unforeseen circumstances shall be reported to the site superintendent immediately the subcontractor is to take no action outside the intended scope of work with out the express written consent by the contractor. All dialogue for any changes to the supplied Scope of Work, Drawings and Specifications may not be discussed with the user or USACE without the Project Manager or other authorized Alpha Enery and Electric point of contact.

# EXHIBIT 3



# WELLS CARGO

January 6, 2017

**Southwestern Construction**
1882 East Joe Circle
St George, UT 84790
Ph# (510) 377-4522 Fax# (435) 538-7261

**ATTN: Steve Thurston**

**Re: Nellis camp ground paving @ Nellis and LV Blvd**

**Wells Cargo, Inc. is pleased to submit the following proposal:**

| Item | Description | Quantity | Unit | Unit Price | Amount |
|------|-------------|----------|------|-----------|--------|
| 1 | 3" Onsite 3/4" PG 76-22 - Base Bid | 200,100 | SF | $1.64 | $328,164.00 |
| | **Total** | | | | **$328,164.00** |
| 2 | 3" Onsite 3/4" PG 76-22 - Option 1 | 39,090 | SF | $1.64 | $64,107.60 |
| 3 | 3" Onsite 3/4" PG 76-22 - Option 2 | 12,590 | SF | $1.64 | $20,647.60 |

*Price good through January 2017*
*Includes fog and prime*
*AC will be paved in a single lift.*

**THE LINE ITEMS IN THIS PROPOSAL CANNOT BE CONTRACTED INDEPENDENTLY.**

**Includes one mobilization; any additional mobilizations will be $3,000.00 each.**

Payments are to be made at thirty-day intervals, beginning thirty days after the start of the job.

All material is guaranteed to be as specified. All work to be completed in a workmanlike manner according to standard practices. Any alteration or deviation from specifications below involving costs will be executed only upon written orders, and will become an extra charge over and above the estimate. All agreements are contingent upon strikes, accidents or delays beyond our control. Owner is to carry fire, tornado, and other necessary insurance. Our workers are fully covered by Workman's Compensation Insurance.

Due to the volatile nature of diesel fuel and asphalt prices, Wells Cargo cannot guarantee the asphalt prices beyond the date specified above. **CONTRACTS ENTERED INTO BY WELLS CARGO, INC. MUST CONTAIN A VALID AND ENFORCEABLE ASPHALT AND FUEL ESCALATION CLAUSE.**

**WELLS CARGO, INC.**

Randal Huntsman
Estimator

SJT
Int.

9127 W. Russell Rd. Suite 210 Las Vegas, NV 89148 • Tel. (702) 876-5090 • Fax (702) 871-7008 • www.wcilv.com • License #273 AB

# TERMS & CONDITIONS

**Re: Nellis camp ground paving @ Nellis and LV Blvd**

The terms and conditions set forth below, govern any contractual agreement with WELLS CARGO, INC. (WCI), unless specifically set forth in the body of the proposal, bid, or contractual agreement. This proposal is to be made an exhibit to the contract.

**Exclusions:**
Pavement markings, signs, flaggers, traffic control, barricades, permits, fees, prime for onsite paving, engineering, testing, inspection, certifications, surveying, street sweeping, staking, striping, backfill, type II supply and install, rip-rap, bonds, soil poisoning, hazardous material removal, de-watering, sheering, shoring, and bracing, premium time, demo below grade improvements, utility adjustments, excavation or backfill of footings/foundations or retaining walls, removal of excavated material, UTACS, Open Grade, federal or state required mix designs and PG material.

**Standards:**
In that grading will be done according to staking performed by, or on behalf of, the Owner/Developer, WCI will not be held responsible or liable for mistakes, differences, or inconsistencies in elevations, drainage, or other grading conditions resulting from engineering, surveying and/or staking, mistakes, miscalculations, defects and/or deficiencies.

When WCI's work has passed applicable compaction testing, WCI is no longer responsible for areas subsequently affected by other trades, subcontractors; and contractors or any other alterations, disturbances of WCI's work, whether man-made of by act of God.

WCI is not responsible for elevation, compaction, grading or clearing of footing spoils or grading FHA swales around pads, unless same is specifically set forth in the contract, proposal and/or agreement.

WCI is not responsible for drainage of less than one percent (1%) slope.

**Site Conditions:**
WCI is not, and does not purport to be, a civil or geotechnical engineer and/or surveyor. WCI is not liable for site conditions not expressed, depicted and/or represented in the applicable contract documents, and which have not been considered in WCI's investigation. WCI shall not be responsible for any conditions, which are not readily visible by a site inspection.

**Special Conditions:**
Any rock or caliche encountered will be handled on a time and material basis. Any and all grading, paving or engineering of handicapped access is specifically excluded. Any additional over-excavation beyond what is specifically outlined in the proposal will be quantified in the field by the soils engineer and will be performed on a time and material basis.

**Placement:**
All bids and estimates are estimated on time placement of paving crew on job site, all other required returns to the job site will be billed on a time and material basis. All estimates are based upon plan measurements, field measurements will prevail. Any increase or decrease in quantities and costs will be charged at unit prices based upon the contract price, or if there is no contract price then either time and material or negotiated price.

**Insurance:**
If the job requires OCIP insurance Wells Cargo, Inc. needs to be informed at bid time, or there will be a 1% increase added to the amount of the proposal and/or contract, to cover the additional cost to Wells Cargo, Inc.

Approved By: _____

Print Name: ___Steve Thurston___

Title: ___Controller, Las Vegas Area Manager___

9127 W. Russell Rd. Suite 210 Las Vegas, NV 89148 • Tel. (702) 876-5090 • Fax (702) 871-7008 • www.wcilv.com • License #273 AB



# WELLS CARGO

December 11, 2017

**Southwestern Construction**
1882 East Joe Circle
St George, UT 84790
Ph# (510) 377-4522 Fax# (435) 538-7261

**ATTN: Steve Thurston**

**Re: Nellis camp ground patch paving @ Nellis and LV Blvd**

**Wells Cargo, Inc. is pleased to submit the following proposal:**

| Item | Description | Quantity | Unit | Unit Price | Amount |
|------|-------------|----------|------|-----------|--------|
| 1 | 3" Onsite 3/4" PG 76-22 Patching ( Water Line Leak ) | 4 | LS | $4,000.00 | $16,000.00 |
|  | **Total** |  |  |  | **$16,000.00** |

*Price good through December 2017*
*Includes fog and prime*
*AC will be paved in a single lift.*

### THE LINE ITEMS IN THIS PROPOSAL CANNOT BE CONTRACTED INDEPENDENTLY.

**Includes zero mobilization; any additional mobilizations will be $3,000.00 each.**

Payments are to be made at thirty-day intervals, beginning thirty days after the start of the job.

All material is guaranteed to be as specified. All work to be completed in a workmanlike manner according to standard practices. Any alteration or deviation from specifications below involving costs will be executed only upon written orders, and will become an extra charge over and above the estimate. All agreements are contingent upon strikes, accidents or delays beyond our control. Owner is to carry fire, tornado, and other necessary insurance. Our workers are fully covered by Workman's Compensation Insurance.

Due to the volatile nature of diesel fuel and asphalt prices, Wells Cargo cannot guarantee the asphalt prices beyond the date specified above. **CONTRACTS ENTERED INTO BY WELLS CARGO, INC. MUST CONTAIN A VALID AND ENFORCEABLE ASPHALT AND FUEL ESCALATION CLAUSE.**

**WELLS CARGO, INC.**

SJT
Int.

Duane E. Hallenback
Project Manager

Page 1 of 2

9127 W. Russell Rd. Suite 210 Las Vegas, NV 89148 • Tel. (702) 876-5090 • Fax (702) 871-7008 • www.wcilv.com • License #273 AB

# TERMS & CONDITIONS

## Re:  Nellis camp ground patch paving @ Nellis and LV Blvd

The terms and conditions set forth below, govern any contractual agreement with WELLS CARGO, INC. (WCI), unless specifically set forth in the body of the proposal, bid, or contractual agreement.  This proposal is to be made an exhibit to the contract.

### Exclusions:
Pavement markings, signs, flaggers, traffic control, barricades, permits, fees, prime for onsite paving, engineering, testing, inspection, certifications, surveying, street sweeping, staking, striping, backfill, type II supply and install, rip-rap, bonds, soil poisoning, hazardous material removal, de-watering, sheering, shoring, and bracing, premium time, demo below grade improvements, utility adjustments, excavation or backfill of footings/foundations or retaining walls, removal of excavated material, UTACS, Open Grade, federal or state required mix designs and PG material.

### Standards:
In that grading will be done according to staking performed by, or on behalf of, the Owner/Developer, WCI will not be held responsible or liable for mistakes, differences, or inconsistencies in elevations, drainage, or other grading conditions resulting from engineering, surveying and/or staking, mistakes, miscalculations, defects and/or deficiencies.

When WCI's work has passed applicable compaction testing, WCI is no longer responsible for areas subsequently affected by other trades, subcontractors; and contractors or any other alterations, disturbances of WCI's work, whether man-made of by act of God.

WCI is not responsible for elevation, compaction, grading or clearing of footing spoils or grading FHA swales around pads, unless same is specifically set forth in the contract, proposal and/or agreement.

WCI is not responsible for drainage of less than one percent (1%) slope.

### Site Conditions:
WCI is not, and does not purport to be, a civil or geotechnical engineer and/or surveyor. WCI is not liable for site conditions not expressed, depicted and/or represented in the applicable contract documents, and which have not been considered in WCI's investigation. WCI shall not be responsible for any conditions, which are not readily visible by a site inspection.

### Special Conditions:
Any rock or caliche encountered will be handled on a time and material basis. Any and all grading, paving or engineering of handicapped access is specifically excluded. Any additional over-excavation beyond what is specifically outlined in the proposal will be quantified in the field by the soils engineer and will be performed on a time and material basis.

### Placement:
All bids and estimates are estimated on time placement of paving crew on job site, all other required returns to the job site will be billed on a time and material basis. All estimates are based upon plan measurements, field measurements will prevail. Any increase or decrease in quantities and costs will be charged at unit prices based upon the contract price, or if there is no contract price then either time and material or negotiated price.

### Insurance:
If the job requires OCIP insurance Wells Cargo, Inc. needs to be informed at bid time, or there will be a 1% increase added to the amount of the proposal and/or contract, to cover the additional cost to Wells Cargo, Inc.

Approved By: _____

Print Name:  Steve Thurston

Title:  Controller, Secretary Treasurer

9127 W. Russell Rd. Suite 210 Las Vegas, NV 89148 • Tel. (702) 876-5090 • Fax (702) 871-7008 • www.wcilv.com • License #273 AB