UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of WELLS CARGO, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALPHA ENERGY AND ELECTRIC, et al., <br><br> Defendants. | Case No. 2:18-cv-1182-JCM-CWH <br><br> ORDER |

Presently before the court is defendants/third party plaintiffs Alpha Energy and Electric, Inc. ("Alpha Energy") and American Contractors Indemnity Company's ("American Contractors") motion to consolidate. (ECF No. 57). Plaintiff United States of America for the use and benefit of Wells Cargo, Inc. ("Wells Cargo"), third-party defendant Southwestern Construction ("Southwestern") and cross claimant/third-party defendant Northcon, Inc. ("Northcon") filed separate responses. (ECF Nos. 60, 63, 65). Alpha Energy and American Contractors filed a separate reply to each response. (ECF Nos. 72, 73, 74).

Also before the court is Alpha Energy's motion to stay case. (ECF No. 56). Wells Cargo, Southwestern, and Northcon filed separate responses (ECF Nos. 61, 62, 66), to which Alpha Energy filed separate replies. (ECF Nos. 69, 70, 71).

Also before the court is Wells Cargo's motion for summary judgment. (ECF No. 45). Alpha Energy filed a response (ECF No. 47), to which Wells Cargo replied (ECF No. 52).

Also before the court is Alpha Energy's motion for summary judgment. (ECF No. 39). Wells Cargo filed a response (ECF No. 44), to which Alpha Energy replied (ECF No. 47).

I.  **Facts**

This action arises from a contract dispute involving a federal construction project on Nellis Air Force Base in Las Vegas, Nevada. (ECF No. 1). On September 30, 2016, the United States Army Corps of Engineers ("USACE") entered into a contract with Alpha Energy to build an additional/alteration family campground ("FAMCAMP"). (ECF No. 39-2). Seven days later, Alpha Energy obtained a Miller Act payment bond with a penal sum of $4,730,350.000 for the FAMCAMP project. (ECF No. 44).

On March 30, 2017, Alpha Energy subcontracted landscaping and asphalt paving work to Southwestern in exchange for $1,250,000.00. (ECF Nos. 39, 39-3). Southwestern then subcontracted certain asphalt paving work to Wells Cargo ("Wells Cargo subcontract"). (ECF No. 39-3). The Wells Cargo subcontract was based on two signed proposals. The first proposal provided a bid of $16,000.00 for patching work. (ECF No. 44). The second proposal provided a base bid in the amount of $328,164.00 and two onsite options totaling $84,755.20. (ECF Nos. 39-3, 44). The proposals also provide that each additional mobilization costs $3,000.00. *Id.*

Wells Cargo performed the asphalting work from August 2017 to December 15, 2017, and billed Southwestern $437,919.20. (ECF Nos. 39-5, 39-7). The bill constituted the total cost for the patching work, the base bid, both onsite options, and three additional mobilizations. *Id.* Southwestern paid Wells Cargo only $304,104.44. *Id.*

Wells Cargo maintained that Southwestern owed $134,814.76 under the Wells Cargo subcontract and prepared a bond claim against Alpha Energy for that amount. (ECF No. 39-6). On March 12, 2018, Wells Cargo sent a ninety-day notice of bond to 1000 E. 34th Street, Kansas City, Missouri 64109-1808, which was the address that Alpha Energy provided in its Miller Act payment bond. (ECF Nos. 39-8, 44). On March 15, 2018, the United States Postal Service ("USPS") made an unsuccessful delivery attempt and eventually returned the notice. (ECF No. 39-9).

At some unknown time, Wells Cargo discovered that the address on the Miller Act payment bond was incorrect. On March 13, 2018, Wells Cargo sent a second ninety-day notice of bond to Alpha Energy's actual address at 1100 E. 34th Street, Kansas City, Missouri 64109-

1808. *See* (ECF No. 39-10). On March 16, 2019, which was ninety-one days after Wells Cargo completed the asphalting work, USPS made another unsuccessful delivery attempt and eventually returned the notice. *Id.* Alpha Energy did not learn about the bond claim until March 19, 2019, when its surety's representative received Wells Cargo's claim. (ECF No. 39-2).

On November 13, 2018, Alpha Energy and Northcon submitted a request for equitable adjustment ("REA") with USACE to increase the general contract price by $421,748.36. (ECF No. 56-7). Alpha Energy represents that this requested adjustment includes the amount that Southwestern owes Wells Cargo under the Wells Cargo subcontract. (ECF No. 56). The record does not indicate whether the federal government has rendered a decision on the REA.

On June 28, 2019, Wells Cargo initiated this action. (ECF No. 1). In the amended complaint, Wells Cargo asserts three causes of action: (1) violation of the Miller Act, 40 U.S.C. § 3131 *et seq.*, against all defendants; (2) unjust enrichment against Alpha Energy and Southwestern; and (3) breach of contract against Southwestern. (ECF No. 41). Thereafter, the parties filed complaints asserting various third-party claims, counterclaims, and crossclaims. (ECF Nos. 6, 15, 27).

Now, Alpha Energy and American Contractors move to consolidate *United States of America For the Use and Benefit of LV Restoration & Plumbing, Inc. v. Alpha Energy & Electric, Inc., et al.*, case number 2:18-cv-01510-KJD-VCF (hereinafter "*LV Restoration v. Alpha Energy*") with this action. (ECF No. 57). Alpha Energy also moves to stay case pending its request for equitable adjustment before the USACE. (ECF No. 56). Lastly, Alpha Energy and Wells Cargo have filed cross-motions for summary judgment on Wells Cargo's Miller Act claim. (ECF Nos. 39, 45).

II. **Legal Standard**

    *a. Stay*

The power to stay proceedings is incidental to the inherent power in every court to control the disposition of its cases in the interests of efficiency and fairness to the court, counsel, and litigants. *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). "The exertion of this power calls for the exercise of sound discretion." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir.

1962). Courts appropriately exercise their discretion to stay a case when the resolution of another legal proceeding will have a direct impact on the issues before the court. *See Mediterranean Enters. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983).

In determining whether to stay a case, courts must weigh "competing interests which will be affected by the granting or refusal to grant a stay[.]" *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citing *CMAX*, 300 F.2d at 268). These competing interests include:

> . . . the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Id.* (citing *CMAX*, 300 F.2d at 268). The movant bears the burden of establishing the need to stay the case. *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

*b. Summary judgment*

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on

each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

Four motions are pending before the court. First the court will deny as moot Alpha Energy's motion to consolidate. Second, the court will deny Alpha Energy's motion to stay case. Third, the court will grant summary judgment in favor of Wells Cargo.

*a. Consolidation*

Alpha Energy and American Contractors request that the court consolidate *LV Restoration v. Alpha Energy* with this action to preserve resources and advance judicial economy. (ECF No. 57). However, the parties in *LV Restoration v. Alpha Energy* have already settled their claims and plan to file a stipulation of dismissal in early September 2019. *See generally LV Restoration v. Alpha Energy*, No. 2:18-1510 (D. Nev.). Accordingly, the court will deny as moot Alpha Energy and American Contractors' motion to consolidate.

*b. Stay*

Alpha Energy requests that the court stay proceedings until the federal government renders a decision on the REA. (ECF No. 56). Specifically, Alpha Energy argues that if the government grants the REA, this litigation will be moot because Alpha Energy will be able to provide Southwestern the funds it owes Wells Cargo. *Id.* Alpha Energy further argues that a stay will not prejudice this litigation as its contract with Southwestern has a "pay if and when paid" provision providing that Alpha Energy has no obligation to pay Southwestern until it receives additional payment from the USACE. *Id.*

The REA process is not relevant to the central dispute in this litigation–Wells Cargo's Miller Act claim. The Ninth Circuit has expressly held that "pay if and when paid" provisions do not preclude a plaintiff from recovering damages pursuant to the Miller Act. *United States for Use and Benefit of Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1208 (9th Cir. 2002). Therefore, Wells Cargo need not wait for Alpha Energy to receive additional funds from USACE to prevail in this litigation.

The equities also weigh against a stay of proceedings. The Millar Act provides that a subcontractor may bring suit after ninety days following the completion of its work. 40 U.S.C. § 3133(b)(1). An adjustment process which has no bearing on the merits of this case does not

warrant frustrating this right. The court also notes that a stay will not substantially streamline this litigation or preserve resources because the parties have already fully briefed cross-motions for summary judgment on Wells Cargo's Miller Act claim. To prevent unnecessary delay, the court will deny Alpha Energy's motion to stay and adjudicate the cross-motions for summary judgment. *See, e.g., Landis*, 299 U.S. at 254 (courts have the inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants").

   *c. Summary judgment*

In adjudicating the cross-motions for summary judgment, the court must resolve (1) whether the "pay if and when paid" provision precludes Wells Cargo from recovering under the Miller Act; (2) whether Alpha Energy and American Contractors owe money to Wells Cargo under the payment bond; (3) whether Wells Cargo did not provide notice of its claim within ninety days following the completion of its work; and (4) whether Wells Cargo has proven the elements for its Miller Act claim.

First, the court explained in section III(b) that "paid if and when paid" provisions cannot preclude recovery under the Miller Act. Second, liability on a Miller Act bond is at least co-extensive with the obligations that the act imposes. *Weststar Eng'g*, 290 F.3d at 1206. The Miller Act requires general contractors on a federal construction project to furnish a payment bond "for the protection of all persons supplying labor and material in the prosecution of work provided for in said contract[.]" 40 U.S.C. § 3133(a). This language applies to subcontractors like Wells Cargo. *See Weststar Eng'g*, 290 F.3d at 1206–1209. Thus, the payment bond's scope of liability covers Wells Cargo's bond claim.

Third, the Miller Act requires subcontractors with no direct relationship to the contractor furnishing the payment bond to give written notice of their bond claim within ninety days after completing the work which gives rise to the claim. 40 U.S.C. § 3133(b)(2). "Failure to comply with the ninety-day notice requirement is fatal to a Miller Act claim." *Ramona Equipment Rental, Inc. ex erl U.S. v Carolin Cas. Ins. Co.*, 755 F.3d 1063, 1067 (9th Cir. 2014).

Courts do not blindly apply the notice provision in the Miller Act. Instead, defendants

must show prejudice. *See Quinn Const., Inc. v. Fidelity & Deposit Co. of Maryland*, No. 06–591 (FLW), 2009 WL 1905174, at *8–9 (D. N.J. June 30, 2009). Here, Alpha Energy and American Contractors received actual notice of the bond claim four days after the notice period expired. (ECF No. 39-2). The record does not indicate that this four-day delay had any prejudicial effect. Moreover, Wells Cargo failed to give timely notice because it relied on the incorrect address that Alpha Energy put on the Miller Act payment bond. (ECF No. 44). Under these circumstances, it would be inequitable to dismiss with prejudice Wells Cargo's Miller Act claim for failure to give timely notice.

Lastly, to prevail on its Miller Act claim, Wells Cargo must also prove that (1) it provided materials and labor in furtherance of work authorized by the Wells Cargo subcontract, (2) Wells Cargo has not been paid, (3) Wells Cargo had a good faith belief that its materials and labor were intended for the contracted work, and (4) that all other jurisdiction requirements are met. *United States ex rel. Hawaiian Rock Prod. Corp. v. A.E. Lopez Enters., Ltd.*, 74 F.3d 972, 975 (9th Cir. 1996).

Wells Cargo has provided undisputed evidence showing that it provided services listed in its signed proposals for the Wells Cargo subcontract. (ECF Nos. 39-3, 44). Although the cost of these services was $437,919.20, Southwestern only paid $304,104.44. (ECF Nos. 39-5, 39-7). Thus, Wells Cargo acted in good faith when it submitted a bond claim in the amount of $134,814.76. As for the jurisdiction requirements, Wells Cargo timely filed this action after the ninety-day notice period expired and before the one-year statute of limitations ran. *See* 40 U.S.C. § 3133(b)(1), (4).

In consideration of the foregoing, the court will grant summary judgment in favor of Wells Cargo on its Miller Act Claim. The court will also dismiss with prejudice Wells Cargo's unjust enrichment and breach of contract claims because the court has resolved all pertinent issues with respect to the Wells Cargo subcontract.

## IV. CONCLUSION

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Alpha Energy and

American Contractor's motion to consolidate (ECF No. 57) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that Alpha Energy's motion to stay (ECF No. 56) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Wells Cargo's motion for summary judgment (ECF No. 45) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that Alpha Energy's motion for summary judgment (ECF No. 39) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Wells Cargo shall prepare and submit to the court a proposed judgment consistent with the foregoing within thirty (30) days from the date of this order.

DATED: July 22, 2019

JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE